**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TRINA FRIEDMAN** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:20cv187-HSO-RHWR** |
| | § | |
| | § | |
| **AUDUBON ENGINEERING** | § | |
| **COMPANY, LLC, and AUDUBON** | § | |
| **ENGINEERING COMPANY, LP d/b/a** | § | |
| **AUDUBON COMPANIES** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT**
**AUDUBON ENGINEERING COMPANY, LLC, AND AUDUBON**
**ENGINEERING COMPANY, LP D/B/A AUDUBON COMPANIES' MOTION**
**[31] FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** are Defendants Audubon Engineering Company,

LLC and Audubon Engineering Company, LP d/b/a Audubon Companies' Motion

[31] for Summary Judgment.  The Motion is fully briefed. Having considered the

Motion on its merits, the related pleadings, the record, and relevant legal authority,

the Court is of the opinion that Defendants' Motion [31] for Summary Judgment

should be granted.

## I. BACKGROUND

Based upon the competent summary judgment evidence, the record reflects

that Greg Harkins ("Mr. Harkins") worked as a Right of Way Agent for Defendant

Audubon Engineering Company, LP ("Audubon"). Ex. [31-3]. Mr.  Harkins's position

was not in management, and he lacked authority to hire or fire employees. *Id*. Mr.

Harkins attended college with Plaintiff Trina Friedman ("Ms. Friedman" or "Plaintiff"), and they had been friends for approximately 25 years. Ex. [31-5] at 5.

Plaintiff, who is proceeding pro se, alleges that Mr. Harkins contacted her and offered to help her obtain employment as a trainee with Audubon. Compl. [1] at 5-6. On December 18, 2018, Ms. Friedman applied for a business development representative position with Audubon. Ex. [31-11]. She alleges that Mr. Harkins told her that her employment would begin with the company in January 2019, and that after she completed her training, she would be promoted to management. Compl. [1] at 6.

In late December 2018, Mr. Harkins flew to Biloxi, Mississippi, to visit Ms. Friedman for the New Year's Eve holiday. Compl. [1] at 6. During this visit, Mr. Harkins called his supervisor, Mr. Erik Breitinger, so that he could speak with Ms. Friedman. Ex [31-1] at 2. The Complaint alleges that during this telephone call, Mr. Breitinger assured Plaintiff "that what Mr. Harkins was saying about Ms. Friedman going to work for Audubon Companies was 100% true." Compl. [1] at 6. According to Mr. Breitinger, he only told Ms. Friedman "that the Company does occasionally hire a trainee with limited experience if we had the right project and if the client would allow the Company to utilize a trainee." Ex. [31-3] at 2. He states in his Declaration [31-3] that "[t]here was no discussion with Ms. Friedman of an immediate job opening and I did not interview Ms. Friedman during this phone call. I did not tell Ms. Friedman that she was hired in any capacity." *Id.* Ms. Friedman

offers no competent summary judgment evidence in her Response [33] to contradict Mr. Breitinger's statements.

After this phone call, Ms. Friedman and Mr. Harkins went to a casino to celebrate New Year's Eve. Ex. [31-5] at 19. After midnight that evening, Mr. Harkins and Ms. Friedman got into an argument in their hotel room, and Ms. Friedman claims "[Mr. Harkins] told me to leave if I wasn't gonna have sex with him." *Id.* at 48. She left, and the next day she received a text message from Mr. Harkins stating that

> This is the only and last time I contact You…. The only person willing to pay your rent, give You money, and promote You with a viable job…and You couldn't even Make Love to him.. All I can said is Your Loss…

Ex. [33-6].

Ms. Friedman then retained an attorney who contacted Audubon on her behalf, Ex. [31-14], and ultimately, she obtained a right to sue notice from the Equal Employment Opportunity Commission ("E.E.O.C."), Ex. [31-15]. Ms. Friedman filed suit in this Court on June 3, 2020, advancing claims for sex discrimination, quid pro quo sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.,* as well as claims under Mississippi law for negligent hiring, supervision, and retention. Compl. [1] at 1.

Audubon has now filed the present Motion [31] for Summary Judgment. It maintains that Ms. Friedman was not qualified for the position for which she applied, and that Mr. Harkins did not have hiring authority. Mem. [32] at 1; Ex. [31-3]. Ms. Friedman responds that Mr. Harkins and Mr. Breitinger confirmed that

3

she would be employed by Audubon and that Mr. Harkins had received the "go ahead" to hire her, but that she was not hired after she refused Mr. Harkins's sexual advances. Resp. [33] at 3.

Ms. Friedman states in her Response [33] that she has attached eight Exhibits to support her position, but Exhibit 8, which she purports to be a letter confirming that Audubon gave Mr. Harkins the authority to hire Ms. Friedman, is missing. *See* Resp. [33]. In total, only three Exhibits to Ms. Friedman's Response [33] are arguably relevant to support her opposition to summary judgment: (1) the results of a criminal background check on Mr. Harkins, Ex. [33-4]; (2) the Declaration of Mr. Breitinger detailing his recollection of the telephone call on December 31, 2018, Ex. [33-5]; and (3) the New Year's Day text message from Mr. Harkins, Ex. [33-6]. Plaintiff's remaining Exhibits, such as a copy of an E.E.O.C. handbook giving guidance on vicarious employer liability for unlawful harassment by supervisors, Ex. [33-1], are irrelevant to the issues presented and do not create a material fact question sufficient to preclude summary judgment.

## II. DISCUSSION

A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant satisfies this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994). To rebut a properly supported motion for summary judgment, the nonmovant must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

In deciding whether summary judgment is appropriate, the Court views all facts and inferences in the light most favorable to the nonmovant. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). Conclusory allegations and unsubstantiated assertions are not enough for a nonmovant to survive a motion for summary judgment. *Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996). If the nonmoving party does not present sufficient evidence to establish an essential element of their claim, entry of summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

B.    <u>Plaintiff's sex discrimination claim under Title VII</u>

Plaintiff claims that Defendants discriminated against her on the basis of her sex because she was either not hired, or her employment with Audubon was terminated prior to her start date, "specifically because she refused to engage in sexual intercourse with Mr. Harkins." Compl. [1] at 9. She claims Audubon's actions violated her right to be free from discrimination, sexual harassment, and retaliation under Title VII. *Id.* at 11.

Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to prohibit discrimination in employment on the basis of race, color, religion, sex, or national origin. *Bostock v. Clayton Cty.,* 140 S. Ct. 1731, 1737 (2020). Where,

as here, a plaintiff cannot provide direct evidence of discrimination, courts apply the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate discrimination claims based upon circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

In order to establish a prima facie case of discrimination under the *McDonnell Douglas* framework, a plaintiff must establish that:

> (1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably.

*Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).

> The plaintiff "carr[ies] the initial burden under the statute of establishing a prima facie case of [sex] discrimination." Once the plaintiff has met this burden, it "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." If the employer has articulated such a reason, then the plaintiff must show that the stated reason "was in fact pretext."

*Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 804).

Because the record reflects that it is undisputed that Ms. Friedman was never actually hired as an employee of Audubon and was merely applying for a position at the company, at summary judgment Audubon can negate an essential element of her prima facie case by showing that Ms. Friedman was not qualified for the position. *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003) ("An employer may establish job requirements, and rely on them in arguing that a prima facie case

6

is not established because the employee is not 'qualified.'"). Audubon argues that

Ms. Friedman cannot establish a prima facie case of sex discrimination, because the

true motivation behind the rejection of her application was that she was not

qualified for the position. Mem. [32] at 7. It is beyond dispute that the listed

qualifications for the job were:

> High School Diploma or GED required
> Minimum of 3 years of experience in the ROW field preferred
> Knowledge to examine public records to determine surface ownership
> rights required
> Ability to negotiate with landowners, tenants, attorneys and permit
> agencies to meet project objectives required
> Ability to maintain orderly documentation and ROW acquisition
> records required
> Proficient in Windows based software and Microsoft Office applications
> (Word, Excel, Outlook, PowerPoint, Access) to complete document
> preparation, project reporting, presentations, and general research
> required
> Proficient in the acquisition of pipeline, power line, communication and
> surface easements and fee land purchases
> Familiarity with condemnation procedures preferred.
> Strong written and oral communication skills required.
> Knowledge to understand the legal agreements associated with any
> given project and legal documents of any nature pertaining to ROW.

Ex. [31-2] at 3.

Audubon contends that Ms. Friedman did not meet these minimum

qualifications. Mem. [32] at 10-11. When asked about these qualifications during

her deposition, Ms. Friedman claimed that the only qualification she did not possess

was the "preferred three years of experience in the ROW field." Ex. [31-5] at 28-29.

However, for many of the required qualifications, such as requisite knowledge to

examine public records and negotiate with landowners, Ms. Friedman

acknowledged that she did not build this claimed experience while working in the

industry; rather, she learned it by watching Mr. Harkins perform his duties, or by teaching herself. *Id.* at 40-41. Ms. Friedman asserted that she assisted Mr. Harkins in his job duties as a Right of Way Agent and gained experience in doing so. *Id.* at 10. As for other qualifications, such as sufficient knowledge to understand the legal agreements surrounding a given project, Ms. Friedman stated that she gained experience by working for her father at KSM Seafood Corporation almost 40 years ago. *Id.* at 42-43.

Based upon the competent summary judgment evidence, Ms. Friedman does not dispute that she did not meet all of the qualifications for the position, specifically three years of experience in the ROW field. In addition, it is highly doubtful that she met other qualifications, such as knowledge to examine public records and ability to negotiate with landowners, and other of the preferred qualifications. This would be sufficient to preclude her from establishing a prima facie case of sex discrimination claim under Title VII.

However, even if Ms. Friedman was qualified for the position, she has not satisfied the fourth element of a prima facie case; that is, she has not shown that she was "replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably." *Nasti,* 492 F.3d at 593. A similarly situated employee must share "nearly identical circumstances" with the plaintiff, such as holding the same job or job responsibilities, sharing the same supervisor, or

having nearly identical conduct that caused the adverse employment action. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

Ms. Friedman has presented no evidence to show who, if anyone, Audubon ultimately hired for the position, nor has she identified any similarly situated comparator who was treated differently than her. *See* Resp. [33]. For this reason alone, Mr. Friedman cannot establish a prima facie case of sex discrimination under Title VII, and this claim cannot withstand summary judgment.

C.   Quid pro quo sexual harassment under Title VII

The Complaint [1] alleges that Audubon's actions violated Title VII when Mr. Harkins engaged in quid pro quo sexual harassment, because Mr. Harkins purportedly conditioned her hiring on behalf of Audubon on her engaging in sexual relations with him. Compl. [1] at 11. Title VII prohibits quid pro quo sexual harassment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). For Ms. Friedman to succeed on this claim, she must show that "(1) she suffered a tangible employment action and (2) the tangible employment action resulted from her acceptance or rejection of her supervisor's alleged sexual advances." *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 201 (5th Cir. 2007).

Ms. Friedman can establish the first prong – that she suffered a tangible employment action – because she was not hired. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

However, Ms. Friedman's claim fails on the second prong. First, Defendants have produced evidence that Mr. Harkins was not Ms. Friedman's supervisor and was not involved in the hiring process at Audubon, nor did he have authority to make hiring decisions. Ex. [31-3]. Ms. Friedman has not pointed the Court to any competent summary judgment evidence creating a dispute on this point. *See* Resp. [33]. Because Mr. Harkins was not involved in the hiring decision, Ms. Friedman cannot satisfy "the necessary causal nexus" between the tangible employment action and the alleged harassment. *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 482 (5th Cir. 2002); *see also Casiano v. AT&T Corp.*, 213 F.3d 278, 283–85 (5th Cir. 2000) (finding no tangible employment action when an employee was denied access to a training program because another manager, not the harassing manager, was responsible for the decision). Nor has she pointed the Court to any evidence that any decision by Audubon not to hire her was based upon her refusal of Mr. Harkins's advances, and conclusory assertions and mere subjective belief are insufficient to avoid summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). For these reasons, Ms. Friedman's quid pro quo sexual harassment claim must be dismissed.

D.    Retaliation claim under Title VII

Ms. Friedman claims that Audubon retaliated against her because her job offer was revoked when she refused Mr. Harkins's advances. Compl. [1] at 11. To

10

establish a prima facie case of retaliation under Title VII, Ms. Friedman must show that "(1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019*), as revised* (Jan. 25, 2019). Protected activity occurs when "[an employee] has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (citing § 2000e–3(a)).

Even assuming that Plaintiff engaged in protected activity when her attorney sent a letter to Audubon detailing her encounter with Mr. Harkins, Ex. [31-14], she has not submitted sufficient evidence to create a material fact question that there was any causal connection between that letter and Audubon's decision not to hire Ms. Friedman. Audubon claims, and has presented evidence that, Ms. Friedman was not hired because she was not qualified for the position. Mem. [32] at 15; Ex. [31-3] at 2. "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Noting that causation is a highly fact-specific inquiry, "the Fifth Circuit has identified factors supporting causation including '(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and

procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination.'" *Cephus v. Texas Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 832 (S.D. Tex. 2015) (citing *Smith v. Xerox Corp.*, 371 Fed. App'x. 514, 520 (5th Cir. 2010)). Ms. Friedman applied to Audubon on December 18, 2018, Ex. [31-11], and the letter detailing her allegations against Mr. Harkins was received shortly after that, in early January 2019, Ex. [31-14]. Audubon has not specified a date on which it reviewed Ms. Friedman's application to determine whether to interview or hire her for the position.

Very close temporal proximity can under some circumstances be adequate evidence to support a prima facie case of retaliation. *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). However, even if Plaintiff successfully establishes a prima facie case of retaliation, "the burden then shifts to [the defendant] to articulate a legitimate, nonretaliatory reason for the adverse employment action." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004). Audubon has articulated a legitimate, nonretaliatory reason for the adverse employment action, namely that Plaintiff did not meet the position's required qualifications. Mem. [32] at 7; Ex. [31-5] at 37-43.

Because Audubon has presented a legitimate, nonretaliatory reason for not hiring Ms. Friedman, she must show that this explanation for Audubon's decision is pretext. *Septimus v. Univ. of Houston,* 399 F.3d 601, 607 (5th Cir. 2005). Specifically, she must prove that "the adverse employment action taken against [her] would not have occurred 'but for' her protected conduct." *Id.* at 608. The only

evidence Ms. Friedman offers in this regard is the close temporal proximity between her attorney's letter to Audubon and Audubon's decision not to hire her.

At the pretext stage, close temporal proximity alone is not sufficient to prove but-for causation. *Strong v. Univ. Healthcare Sys., L.L.C.,* 482 F.3d 802, 808 (5th Cir. 2007) (finding that temporal proximity alone cannot be sufficient proof of but-for causation to show pretext); *see also Dixon v. Moore Wallace, Inc.,* 236 F. App'x 936, 938 (5th Cir. 2007) (close temporal proximity of thirteen days between charge of discrimination and the alleged acts of retaliation could not prove but-for causation to show pretext). Because she has offered no competent proof other than temporal proximity at the pretext stage, Ms. Friedman's retaliation claim cannot survive summary judgment.

E.   Negligent hiring, supervision, and retention under Mississippi law

Ms. Friedman also alleges that Audubon negligently hired, supervised, and retained Mr. Harkins in violation of Mississippi law. Compl. [1] at 12-14. She alleges that Defendants permitted "the use of sexual battery, coercion, and duress in the recruitment and retention of Audubon's female job candidates." *Id.* at 13.

To succeed on these claims under Mississippi law, a plaintiff must show that "the employer knew or should have known of the employee's incompetence or unfitness." *Doe v. Pontotoc Cnty. Sch. Dist.*, 957 So. 2d 410, 416–17 (Miss. Ct. App. 2007) (citing *Eagle Motor Lines v. Mitchell*, 78 So. 2d 482, 486–87 (1955)). Specifically, for each claim Ms. Friedman must prove that Audubon had actual or constructive knowledge of Mr. Harkins's unfitness or otherwise dangerous

13

tendencies. *See id.* at 417 (discussing elements of negligent hiring or retention); *see also Holmes v. Campbell Properties, Inc.*, 47 So. 3d 721, 729 (Miss. Ct. App. 2010) (discussing elements of negligent training or supervision).

Ms. Friedman has produced no evidence that Audubon had actual or constructive knowledge of any propensity of Mr. Harkins for inappropriate or harassing behavior at the time of these events. When Audubon hired Mr. Harkins, it conducted a background check, Ex. [31-16], which can be sufficient to demonstrate that an employer exercised due care when hiring an employee, *see Parmenter v. J & B Enterprises, Inc.,* 99 So. 3d 207, 217 (Miss. Ct. App. 2012) (finding that there was no negligent hiring when a background check was run prior to hiring and a supervisor testified that she had never seen the employee assault, attack, or curse at anyone).

Ms. Friedman claims that this background check would show that Mr. Harkins had four felony convictions, Mem. [33] at 3, but the background check she has submitted in opposition to summary judgment is a copy of Audubon's Exhibit [31-16], which shows only one record, a guilty plea to driving under the influence in 2006, Ex. [33-4] at 1-2. There is no evidence in the background check, or elsewhere in the record, to show that Mr. Harkins had sexually harassed anyone in the past and no indication that he might do so in the future. For this reason, the evidence upon which Ms. Friedman relies shows nothing to indicate actual or constructive knowledge on the part of Audubon of any proclivity to engage in sexual harassment.

*See Parmenter,* 99 So. 3d at 217. This is insufficient at the summary judgment stage to support a claim for negligent hiring, supervision, or retention.

In addition, Mr. Harkins's alleged conduct towards Ms. Friedman took place outside of the work environment, and "employers do not have a duty to supervise their employees when the employees are off-duty or not working." *Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay,* 42 So. 3d 474, 489 (Miss. 2010). For all of these reasons, Ms. Friedman's state-law claims cannot survive summary judgment.

## III. <u>CONCLUSION</u>

To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. Defendants' Motion [31] for Summary Judgment should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [31] for Summary Judgment filed by Defendants Audubon Engineering Company, LLC and Audubon Engineering Company, LP d/b/a Audubon Companies, is **GRANTED**.

**IT IS FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Trina Friedman's claims are **DISMISSED WITH PREJUDICE.** A separate final judgment will be entered pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 25th day of February, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE